Opinion issued November 26, 2024



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-22-00827-CV

————————————

**JASON ALEXANDER, JOE MCADAMS, ELIAS ABRAHAM, LAWRENCE ANDERSON, LISA ASTIN, JORGE ATENCIO, DAVID AYRE, DOUGLAS AUSTIN, JAMES BARCLIFT, MARTIN BENSON, MARIA BLACKWELL, THOMAS BOEHME, CHRISTOPHER BOYER, SCOTT CALL, ORLANDO CAMARILLO, STEPHEN CAPPS, CARLOS AREVALO-GARZA, GEORGE COBB, TERESA CONRAD, JIMMY CRANE, LEE DAVIS, DUSTIN DE LOS SANTOS, JAMES DIEMER, LAWRENCE DIO, ROBERT DIXON, TIMOTHY DIXON, DWAYNE DUKE, DARLENE DYMOND, DAVID EIDSMOE, MARTIN DURAND, DEAN CORBETT, HILARY ELGART, WILLIAM EVANS, CESAR HERNANDEZ GOMEZ, DEAN FANGUY, WOLFGANG FAUST, SONYA FLOWERS, GREG FOLKS, MITCH FUENTES, ROGELIO GAMIZ, ROBERTO GARCIA-HOOKES, RONALD GILCREASE, RAUL GIORGI, MICHAEL GIOVINAZZO, ARCHIE GREGORY, SALLY GRIFFIN, DREW GOODBREAD, HECTOR GUIZAR-BLANCO, KENNETH HAYEK, LARRY HEIGHINGTON, PAUL HEIMLICH, FERNANDO HESS, DONALD HICKEY, PATRICK HOLUB, SETH HOVER, MICHAEL HOWARD, ALEXIS HURST, COSME IGLESIAS, JOHN HARRIS, KERRY HOELLER, SEAN IRBY, TRACY JACKSON, DAVID KANDT, DEBRA KING, KENNETH LAUDUCCI,**

JOSEPH LOCKE, CARLOS LOPEZ, TAMMY FOSTER, DAVID MA, JACOB MAGIN, HARALD PAULI, MATTHEW MARTIN, LESLIE MARTINEZ, MCWILLIAM MALAVE, GAIL MANISCALCO, PAUL MARSTON, DALLIS LINDLEY, JAMES MARTIN, GABOR MARQUEZ, BLAKE HARRIGAN, KEVIN REINOSO, ANTHONY PADILLA, KONRAD IZBINSKI, TORSTEN SCHMIDT, ROBERT MCCARTHY, LUCIO ELIZONDO, CHRISTOPHER MCKEE, CALEB MCLAUGHLIN, GLENN MCMILLEN, VIVEKANAD SISTA, JEFF MOSS, WENDELL CLEAVER, RISELEA MCLEROY, JASON MILESKI, ROBERTO OLIVAS, RANDY MOORMAN, JAMES MUELLER, PATRICIA NOACK, MATTHEW NOVAK, DAVID ODORIZZI, TRAVIS THOMAS, JERE BRUBAKER, JEREMY OEHMEN, STAN OKAZAKI, NGIABI GICUHI, BERNARD OTTEN, RICARDO PALMA, OSCAR MUNOZ PAZ, OLGA PERRY, GEORGIE PETERSEN, PENNY PRATER, GERARDO RAMIREZ, TIMOTHY RENNIE, DAGOBERTO MORA, MICHAEL RICHEY, KATHLEEN RIZZO, RICHARD ROACH, LUIS MARROQUIN ESPINOSA, KAZEM SALEHIAN, ARTHUR SALERNO, HARDY BAKER, SUSAN SARAZEN, MARC CRUDGINGTON, CLINTON SCOTT, JAMES SEAMANS, ESTEBAN SEANEZ, SAUL SELLINGER, TIMOTHY SERRANO, ROY SLAY, MARIUS DOYLE, TIMOTHY SMITH, MIRZA BAIG, EDGARDO RAMOS-TENORIO, JAMES SOEDER, JOSEPH MCGAUGH, EDWARD STOWE, JOSEPH EFFERT, ERIC TABANOU, RILEY ARCHER, AVINASH TAWARE, CHRISTOPHER BACK, BLYTHE THOMAS, LAKIA CHAMPAGNE, WILLIAM THOMPSON, ANIL PALASAMUDRAM, LEO TEPLITSKILY, JEREMY TRAVIS, LUIS HESS, TIMOTHY LEE, TIBBS FAMILY TRUST, TIMOTHY VAN OOST, CAROLINA GARCIA, THILO VOSS, DAVID MINOR, JERRY WEBB, DEBRA WHITLA, THOMAS WOJAHN, TIMOTHY YANAVAGE, YOUNG LEE, MANUEL ABREU VARGAS, JOSEPH XIE, FERNANDO ZAVALA, ALEX ZENGO, WALTER FENTON, KENNETH BECK, JASON BRADEN, RICHARD BUKOVICH, KRISHNANAND ANANDAN, GREGORY BURKHART, THOMAS BARLOW, LENWOOD BORDELON, TOMMY DRAKE, TIMARRON LAKES COMMUNITY ASSOCIATION, STEVEN CALKINS, CALEB VARIO, ROBERT CAPPADONA, DEYSE NORWITZ, ELIAS CHIRICO, MIRIAM DE DIEGO ANITUA, RANDALL CRIMMINS, KIMBERLEE DYER, GEORGE GARNER, LUANN INGRAM, MORGAN

GARTNER, JOSEPH LONG, FRANKLIN HALTER, JONATHAN HANEY, KATHLEEN HERR, LUIS CORDOBA, KAREN CLARKE, MICHAEL JONES, SCOTT FAIRLEY, ALEX IRVINE, RAVINDRA JOSHI, MICHAEL YNOSENCIO, DEEPESH KAUSHISH, HAYWARD KELLEY, MARK CRAWFORD, WADE KHOURY, EDWARD WOLF, WILLIAM WOOD, VICTOR WILLIAMS, WILLIAM LAINHART, STEVEN RESNICK, MARCO SANCHEZ, CHARLES MART, BRUCE SMITH, CAROLYN STUBER TRUST, J. JESUS MORENO TROUSSELLE, KHANG NGUYEN, JOHN WADELLA, TERESA NOLAND, LARRY WARD, PAUL PEDLAR, SCOTT TOWNSEND, LUIS CORONA, MORRIS REINISCH, MICHAEL LONG, CHRIS REICHARDT, CORY MOORE, CHRIS STAVINOHA, MARC BEAUCHAMP, BRUCE HOOK, KEITH WINTERS, JOSEPH WITCRAFT, MATHEW VALICEVIC, MICHAEL FISCHER, JACINTO SOLIS, RICARDO RAMIREZ, PATRICK MCCORMACK, STEVEN IRION, SHAWNA ALEXANDER, MARISA ANDERSON, BRAD ASTIN, PAOLA MORON FERNANDEZ, LUZ MARIA AYRE, MARYELLEN AUSTIN, CYNTHIA BARCLIFT, GEORGETTE BENSON, JETTE BOEHME, KIMBERLY CALL, RUBI CAMARILLO, FRANCES M. CAPPS, ALEJANDRA SOFIA CARDENAS-MARTINEZ, SHARON CROSS, DEBRA H. CRANE, ANDREA DE LOS SANTOS, MAUREEN R. DIEMER, SUSAN W. DIO, DEBRA DIXON, SUSAN R. DIXON, KIMBERLY DUKE, KELLY EIDSMOE, MARIA CORINA DURAND, KAREN CORBETT, MARIA FERNANDA ROSIQUE FLOTA, BRIDGET FANGUY, CHRISTINE JASCHINSKI, BETH FOLKS, DAWN FUENTES, VANESSA GAMIZ, PAMELA GARCIA-HOOKES, SANDRA GILCREASE, ANNA GIORGI, TAMI GIOVINAZZO, KATHLEEN E. GREGORY, DONNA GOODBREAD, CARMEN MUNOZ-DIEGO, JENNIFER HAYEK, MAUREEN HEIGHINGTON, BONNIE S. HEIMLICH, ROSA HESS, ELIZABETH HICKEY, KAY HOLUB, LINDSEY HOVER, LEIGH HOWARD, NATHAN HURST, SHANNON IRBY, GABRIELA JACKSON, BRENDA KANDT, DEBORAH LAUDUCCI, LIZZETH MORALES, VI NGUYEN, LORI MAGIN, HELENE PAULI, AND ALICIA MARTIN, Appellants

V.

THE WOODLANDS LAND DEVELOPMENT COMPANY L.P., THE

3

**HOWARD HUGHES CORPORATION, LJA ENGINEERING, INC. F/K/A
LJA ENGINEERING & SURVEYING, INC., AND JAMES R. BOWLES,**
**Appellees**

---

## On Appeal from the 215th District Court
### Harris County, Texas
### Trial Court Case No. 2018-36108

---

## MEMORANDUM OPINION

Appellants[1] challenge the trial court's rendition of summary judgment in favor

of appellees—The Woodlands Land Development Company L.P., the Howard

Hughes Corporation (Howard Hughes), LJA Engineering, Inc., formerly known as

LJA Engineering & Surveying, Inc. (LJA Engineering), and James R. Bowles

---

[1]    We do not list appellants by name in the body of the order because of their large number.

By our memorandum order of September 26, 2023, the appeal was dismissed for want of jurisdiction on The Woodland Land Development Company and Howard Hughes's "Agreed Motion to Dismiss Non-Appellants from Appeal" as to the claims brought by the following individuals: Dotty McAdams, Jeff Benton, Randy Deaton, Hope DuBois, Patricia Harmon, Cheryl Ann Harland, Tim Huber, David Jupp, John Abright, William Batson, Felix Kleiman, David Lozano, Julio Mayagoitia, Earl McDonald, Jorge Gonzalez, Richard Morar, Elliot Pederson, Michael Mize, Jeremy Tinker, Clayton Repka, Jeffrey Shinsato, Robert McRae, Catherine Dunaway, Ollie Verchow, Benito Tagle, Brian Welp, Matthew Derganc, Marcos Varona, Trevor Taggart, Robert Bivens, Robert Perez Bobadilla, Elda Calhoon, Joan Flowers, Frank Gore, Kent Tarou, John Hoffman, Johanna LaChance, Maureen McMullan, Scott Nylund, Yan Wang Order, Paul Dosescu, Francisco Cano Onate, David Williams, Jessica Benton, Karen A. Deaton, Lawrence Harmon, Yadira Gonzalez, Sarah Huber, Amber Michelle Abright, and Amber M. Batson. *See* TEX. R. APP. P. 42.1(a)(2).

(collectively, appellees)—in their suit against appellees for negligence, gross negligence, and negligent undertaking.[2] In four issues, appellants contend that the trial court erred in granting appellees summary judgment.

We affirm.

**Background**

In their seventh amended petition, appellants alleged that they owned homes in a residential subdivision known as "Timarron" in The Woodlands, Texas. According to appellants, the subdivision was bordered on its northern and western sides by Spring Creek, a tributary to the West Fork of the San Jacinto River.

Appellants further alleged that in October 1994, "a catastrophic rainstorm hit" the Houston, Texas area, "dropp[ing] between [twenty] and [thirty] inches of rain throughout . . . [the] northern portions of Harris County," Texas and "causing historic flooding." "[I]n the vicinity of the Timarron area, the [flooding from the] October 1994 [storm] was estimated to have reached flood levels at or about a 500-year flood event." (Emphasis omitted.) According to appellants, The Woodlands Land Development Company and LJA Engineering knew about the

---

[2] Appellants also brought claims for violations of the Texas Deceptive Trade Practices Act (DTPA) against The Woodlands Land Development Company and Howard Hughes, but appellants do not challenge on appeal the trial court's rendition of summary judgment in favor of The Woodlands Land Development Company and Howard Hughes on appellants' DTPA claims. Thus, such claims will not be addressed in this opinion. *See* TEX. R. APP. P. 47.1.

"[p]roblems with flooding" in Timarron, including the flooding related to the October 1994 storm.

After the October 1994 storm, The Woodlands Land Development Company and Howard Hughes began to design and develop Timarron. "Timarron was built in stages or sections," and "[a]ll sections [were] built outside of or beyond the 100-year floodplain with some portions needing to be filled with dirt in order to be elevated so as to be above the 100-year flood levels." Appellants, however, alleged that "many of these sections remained within the 500-year floodplain, despite the fact that th[o]se areas flooded in the October 1994 [storm]." And according to appellants, The Woodlands Land Development Company and Howard Hughes knowingly built sections of Timarron in the 500-year floodplain; they "did not develop and build [Timarron] in a manner that put properties outside of, or above, the 500-year floodplain to reduce the likelihood of flooding."

Appellants further alleged that in planning Timarron, The Woodlands Land Development Company and Howard Hughes "set a standard[] policy and criteria for determining the minimum elevation of a house relative to its geographic location and that location's risk of flooding by stating that all house slabs shall be at least [six] inches above the October 1994 [storm flood level] . . . , which . . . was at or above the 500-year floodplain level in the area." (Emphasis omitted.) That information was provided to LJA Engineering and Bowles, who "then prepared

6

plans showing th[at] minimum elevation for each of the homes to be built near Spring Creek" by home builders. But appellants alleged that the information given by The Woodlands Land Development Company and Howard Hughes to home builders in Timarron related to "setting the minimum slab elevations of the[] homes was about [one]-foot lower than both the October 1994 [storm] flood level and the 500-year floodplain level." Ultimately, "[t]he lots . . . were not elevated to prevent them from flooding during a 500-year flood event, nor were the streets elevated to make them . . . passable during such an event."

According to appellants, in August 2017, Hurricane Harvey "dumped about [twenty-five] inches of rain over the Spring Creek watershed upstream of Timarron over a [four]-day period." "This was about the same amount of rain that fell during the October 1994 [storm] and [it] produced slightly lower flood levels along Spring Creek than . . . the October 1994 [storm did]."

Appellants also alleged that they owned homes in Timarron that flooded during Hurricane Harvey, which caused appellants to be "displaced from their homes and . . . endure[] months and years of costly repairs and rebuilding." And they alleged that The Woodlands Land Development Company and Howard Hughes "made errors by instructing home builders to set their slabs for all or some of the homes in Timarron at an elevation that was unreasonably low for the elevation of the land it was built on" and was below "the standard [that The Woodlands Land

7

Development Company and Howard Hughes] had set." According to appellants, The Woodlands Land Development Company and Howard Hughes "knew or should have known to have the houses built at an elevation adequate to prevent the likelihood of flooding" based on information "from previous flooding in th[e] area," such as the flooding from the October 1994 storm.

Appellants brought claims against appellees for negligence, gross negligence, and negligent undertaking. As to their negligence and gross negligence claims against The Woodlands Land Development Company and Howard Hughes, appellants alleged that The Woodlands Land Development Company and Howard Hughes owed duties of care to appellants and breached their duties by:

- Developing Timarron in a manner that cause[d] lots and homes to flood during a foreseeable weather event;

- Instructing home builders to set minimum slab elevations much lower than the standard set by The Woodlands Land Development Company and Howard Hughes;

- Failing to use ordinary care in setting minimum slab elevations for homes to be built in [Timarron]; and

- Failing to use ordinary care in monitoring and overseeing that the home builders built to the minimum slab elevation standards, per the terms of their contract with the builders.

Appellants also alleged that the acts or omissions of The Woodlands Land Development Company and Howard Hughes proximately caused their injuries and damages.

8

Further, appellants asserted that the conduct of The Woodlands Land Development Company and Howard Hughes, when viewed from the standpoint of the actors at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. And the conduct demonstrated an attitude of conscious indifference for the rights, safety, and welfare of others and showed that The Woodlands Land Development Company and Howard Hughes had actual and subjective awareness of the dangers of such conduct. Because The Woodlands Land Development Company and Howard Hughes "proceeded with a conscious indifference to the rights, safety, and welfare of others, including [appellants]," appellants asserted that they were liable to them for exemplary damages.

As to their negligent undertaking claims against The Woodlands Land Development Company and Howard Hughes, appellants alleged "[a]n additional duty" to appellants was created when The Woodlands Land Development Company and Howard Hughes "sought to dictate slab elevations within [Timarron]." According to appellants, The Woodlands Land Development Company and Howard Hughes, "undertook to dictate minimum slab elevations for all homes built [in Timarron]" and "the[] slab elevations were dictated for the sole purpose of protecting the property of [appellants], specifically the homes built in a development located in an area known to be subject to flood hazards." Further, The Woodlands Land

Development Company and Howard Hughes "failed to exercise reasonable care in dictating the[] slab elevations by failing to check the elevations against historical flood data in [their] possession of which [they] knew or should have known, and by failing to monitor or oversee that home builders actually built to the specified elevations." Appellants alleged that they relied on The Woodlands Land Development Company and Howard Hughes to develop Timarron in a manner safe from reasonably foreseeable flooding. According to appellants, "[b]y developing in an area known to be subject to foreseeable flooding without exercising reasonable care in dictating minimum slab elevations," The Woodlands Land Development Company and Howard Hughes increased appellants' risk of harm. The "negligent development" by The Woodlands Land Development Company and Howard Hughes was the proximate cause of and/or contributed to the harm suffered by appellants "during a foreseeable flooding event."

As to their negligence and gross negligence claims against LJA Engineering and Bowles, appellants alleged that LJA Engineering and Bowles owed duties of care to appellants and LJA Engineering and Bowles breached their duties by:

- Failing to use ordinary care in the analysis, design, and engineering of [Timarron];

- Failing to use ordinary care in setting minimum slab elevations for homes to be built in [Timarron]; and

- Other acts deemed negligent and grossly negligent.

10

Appellants also alleged that the acts or omissions of LJA Engineering and Bowles were a proximate cause of appellants' injuries and damages.

Further, appellants alleged that the conduct of LJA Engineering and Bowles, when viewed from the standpoint of the actors at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. And their conduct demonstrated an attitude of conscious indifference for the rights, safety, and welfare of others and showed that LJA Engineering and Bowles had actual and subjective awareness of the dangers of such conduct. Because LJA Engineering and Bowles "proceeded with a conscious indifference to the rights, safety, and welfare of others, including [appellants]," appellants asserted that LJA Engineering and Bowles were liable to them for exemplary damages.

As to their negligent undertaking claims against LJA Engineering and Bowles, appellants alleged that "[a]n additional duty to [appellants] on the part of [LJA Engineering and Bowles] was created when [they] sought to analyze, design, and engineer the subdivision, the storm water management systems, and the minimum slab elevations for homes built" in Timarron. Specifically, LJA Engineering and Bowles "undertook to analyze, design, and engineer [Timarron], the storm water management systems, and the minimum slab elevations for homes to be built" in Timarron, and "the[] undertakings were set for the ultimate purpose of protecting the property of [appellants], specifically the homes built in a development located in

11

an area known to be subject to flood hazards." According to appellants, LJA Engineering and Bowles failed to exercise reasonable care in analyzing, designing, and engineering Timarron, the storm water management system, and the minimum slab elevations for the homes to be built in Timarron by failing to properly apply historical flood data of which they knew or should have known. Appellants relied on LJA Engineering and Bowles "to analyze, design, and engineer [Timarron], the storm water management system, and the minimum slab elevations for homes to be built" in Timarron "in a manner safe from reasonably foreseeable flooding," and by failing to exercise reasonable care in performing their services, LJA Engineering and Bowles increased appellants' risk of harm. The negligent analysis, design, and engineering by LJA Engineering and Bowles was the proximate cause of and/or contributed to the harm suffered by appellants during a foreseeable flooding event.

Appellees answered,[3] generally denying the allegations in appellants' petition and asserting certain affirmative defenses, including estoppel. Appellees then filed multiple summary judgment motions related to appellants' claims against them.

Howard Hughes moved for summary judgment, arguing that it was entitled to judgment as a matter of law on appellants' negligence, gross negligence, and negligent undertaking claims against it because it was not involved in the

---

[3] The Woodlands Land Development Company and Howard Hughes filed a joint answer, and LJA Engineering and Bowles filed a joint answer.

12

development of Timarron, either directly or indirectly. According to Howard Hughes, it acquired an ownership interest in The Woodlands Land Development Company after Timarron was platted and was simply the parent company of The Woodlands Land Development Company at the time appellants filed suit. Further, appellants had not alleged a theory of indirect liability against Howard Hughes, such as alter ego or piercing the corporate veil.

Howard Hughes asserted that it was entitled to summary judgment because no evidence existed to support the elements of appellants' negligence, gross negligence, and negligent undertaking claims against it. For example, according to Howard Hughes, appellants could not establish the elements of duty or breach against Howard Hughes or "the additional elements for gross negligence." Additionally, even if appellants had evidence of duty and breach related to Howard Hughes, there was no evidence that Howard Hughes was the proximate cause of appellants' damages. Thus, Howard Hughes asserted that it was entitled to summary judgment on appellants' claims against it on matter-of-law grounds as well as no-evidence grounds.[4]

---

[4] Howard Hughes attached to its summary judgment motion a copy of the transcript from the depositions of Tim Welbes, an employee of Howard Hughes and co-president of The Woodlands Land Development Company, as well as the copy of an email, stating that Howard Hughes "did not have any ownership control of [The Woodlands Land Development Company] at the time the flooded properties . . . were platted."

In their response to Howard Hughes's summary judgment motion, appellants argued that Howard Hughes was not entitled to judgment as a matter of law on their claims for negligence, gross negligence, and negligent undertaking because Howard Hughes did not "conclusively establish that [it] was not involved." Instead, the deposition testimony of Welbes established that "when the decision was made to develop Timarron," Howard Hughes "was an owner" of The Woodlands Land Development Company, and "by 2016, [The Woodlands Land Development Company] was 100 percent owned" by Howard Hughes. Further, appellants asserted that the email which Howard Hughes had attached to its summary judgment motion conflicted with the deposition testimony of Welbes, and according to appellants, it did not matter that Howard Hughes "did not have any ownership control of [The Woodlands Land Development Company] at the time the flooded properties . . . were platted" because the "platting of a subdivision occurs well before the design and development of the subdivision and the setting of the slab elevations for homes being built in the subdivision." Further, appellants argued that the no-evidence portion of Howard Hughes's summary judgment motion should be denied because there was more than a scintilla of evidence that Howard Hughes was involved in the development of Timarron.[5]

---

[5] Among other things, appellants attached to their response a copy of the transcript from Welbes's deposition.

14

In its reply to appellants' response, Howard Hughes reiterated that it did not develop Timarron, was not involved in the development of Timarron, and appellants had not asserted a theory of indirect liability against Howard Hughes. Further, none of the evidence cited by appellants in their response showed that Howard Hughes was involved in the actual development activities about which appellants complained, namely, the allegedly negligent determination of minimum slab elevations for the homes on appellants' properties. Thus, because appellants could not establish that Howard Hughes was involved in the development activities about which appellants complained, appellants could not establish any element of their negligence, gross negligence, or negligent undertaking claims. According to Howard Hughes, Appellants were required to "have evidence indicating that [Howard Hughes] itself engaged in some conduct that subject[ed] it to liability," and they "ha[d] none."

The trial court granted Howard Hughes summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims against it.

Next, The Woodlands Land Development Company, LJA Engineering, and Bowles[6] moved for summary judgment on appellants' negligence, gross negligence,

---

[6] Before The Woodlands Land Development Company, LJA Engineering, and Bowles filed this summary judgment motion, the trial court granted Howard Hughes's summary judgment motion, dismissing appellants' claims against Howard Hughes. But The Woodlands Land Development Company, LJA Engineering, and

and negligent undertaking claims against them, asserting that they were entitled to judgment as a matter of law. In their motion, The Woodlands Land Development Company, LJA Engineering, and Bowles explained that appellants were homeowners in Timarron, a subdivision that flooded during Hurricane Harvey. The Woodlands Land Development Company "began the process of developing" Timarron by "taking large tracks of raw land" and "dividing them into smaller (but still large) areas, called sections; platting and obtaining government approval for those platted sections, with specific streets and lots laid out; and causing the streets and major utilities to be constructed." (Internal footnote omitted.) During development, The Woodlands Land Development Company contracted with LJA Engineering "to perform platting and other engineering work in connection with" Timarron.

The summary judgment motion further explained that during the development of Timarron, The Woodlands Land Development Company "met all [of] Harris County['s] regulatory standards in place at the time, including a requirement that structures in the 100-year floodplain be built [eighteen] inches above the 100-year floodplain." (Emphasis omitted.) The Woodlands Land Development Company

---

Bowles noted in their motion that, if Howard Hughes was "still a party [in the suit]," the arguments in their summary judgment motion "would apply to it too."

16

ultimately decided to recommend that third-party builders build their houses in Timarron "six inches above the flood of record level" from the October 1994 storm.

To determine the "flood of record level," The Woodlands Land Development Company hired a third-party engineering firm, IDS Engineering Group, Inc., formerly known as Pate Engineers, Inc. (Pate).[7] Pate's flood of record level determination was then given to LJA Engineering "to set minimum slab elevations of [six] inches above the 1994 [October storm] flood of record level as determined by" Pate. It was The Woodlands Land Development Company's goal to "recommend minimum slab elevations six inches above the 1994 [October storm] flood of record," as determined by Pate, which is exactly what it did.

Appellants, however, alleged that Pate incorrectly determined the flood of record level, which resulted in the slabs on appellants' properties not actually being built six inches above the 1994 October storm flood of record level. And this is what appellants alleged caused the flooding of their properties.

In their summary judgment motion, The Woodlands Land Development Company, LJA Engineering, and Bowles also explained that appellants bought their

---

[7]    The summary judgment motion noted that appellants' expert witness agreed that Pate was "a well-recognized good reputation engineering firm," which was "well-respected" and "d[id] capable quality work." (Internal quotations omitted.)

properties directly from various third-party builders.[8] Appellants did not buy their properties from The Woodlands Land Development Company; The Woodlands Land Development Company did not have any role in appellants' transactions with the builders; appellants had no contracts with The Woodlands Land Development Company; and appellants admitted that they did not rely on anything that The Woodlands Land Development Company had said when deciding to purchase their properties. Further, although The Woodlands Land Development Company developed Timarron "as a whole, laying out and building streets and major infrastructure," The Woodlands Land Development Company "then subdivided and sold the properties—vacant lots—to the [various third-party] builders." The Woodlands Land Development Company did not build any of appellants' houses. Instead, the third-party builders "made final decisions on—and had ultimate authority over—fill, lot grading, design, and construction, including [the] construction of the slabs and finished floor elevations" for appellants' properties. In short, The Woodlands Land Development Company did not construct the slabs for appellants' houses and did not determine "the final lot grading or slab heights for any of [appellants'] propert[ies]."

---

[8] The summary judgment motion identifies the builders and explains that the builders, and not The Woodlands Land Development Company, LJA Engineering, or Bowles, contracted with appellants to build appellants' houses.

As to LJA Engineering and Bowles, the summary judgment motion additionally explained that neither LJA Engineering nor Bowles were involved in appellants' purchases of their properties nor with the building of appellants' homes. And LJA Engineering and Bowles "did not determine the final lot grading or slab heights for any [of appellants'] propert[ies]."

According to The Woodlands Land Development Company, LJA Engineering, and Bowles, they were entitled to summary judgment as a matter of law on appellants' negligence, gross negligence, and negligent undertaking claims because appellants could not establish that The Woodlands Land Development Company, LJA Engineering, and Bowles owed a duty to appellants for purposes of appellants' negligence and gross negligence claims; appellants could not meet the requirements of imposing "a duty where none exist[ed] for purposes of" appellants' negligent undertaking claims; and even if a duty existed, The Woodlands Land Development Company, LJA Engineering, and Bowles did not breach that duty as a matter of law.

More specifically, as to any negligence duty, the summary judgment motion explained that Texas law had not recognized a duty like what appellants sought to impose in this case. And it explained that whether a defendant owed a duty to a plaintiff "depends on several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the

burden of guarding against injury, and the consequences of placing the burden on the defendant." (Internal quotations omitted.) Further, the nature of the relationship between the plaintiff and the defendant is a significant consideration in determining the existence of a duty of care.

According to The Woodlands Land Development Company, LJA Engineering, and Bowles, none of the factors to be considered in determining whether to impose a new legal duty warranted imposing a duty on them. First, The Woodlands Land Development Company, LJA Engineering, and Bowles had no relationship with appellants, and Hurricane Harvey was an unprecedented storm, which could not be foreseen. Further, the risk of a Hurricane-Harvey-like event was low, and the probability of injury was low "when balanced against the social utility of [The Woodlands Land Development Company, LJA Engineering, and Bowles] complying with existing [regulatory] standards, which [was] what they did." And the "magnitude or burden would be great if [The Woodlands Land Development Company, LJA Engineering, and Bowles] had to undertake ultimate responsibility and authority for construction of slab heights that would guard against unforeseeable floods (usurping this from the [third-party] builder[s] to whom [the properties were already sold])." Additionally, "placing the burden on [The Woodlands Land Development Company, LJA Engineering, and Bowles] would result in highly undesirable consequences—namely, forcing [them] to undertake unrealistic and

20

cost-prohibitive oversight of builders' construction of slabs." Thus, there was "no basis to impose upon [The Woodlands Land Development Company, LJA Engineering, and Bowles] a duty owed toward downstream purchasers in negligence."

The Woodlands Land Development Company, LJA Engineering, and Bowles argued that they were also entitled to summary judgment as a matter of law on appellants' negligent undertaking claims. They asserted that to establish their claims for negligent undertaking, appellants had to show that The Woodlands Land Development Company, LJA Engineering, and Bowles "undertook, gratuitously or for consideration, to render services to another that they knew or should have known were necessary for the protection of a third person; [they] failed to exercise reasonable care to perform the undertaking; and [] (a) the failure to exercise reasonable care increase[d] the risk of such harm; (b) [they] undert[ook] to perform a duty owed by the other [sic] to the third person; or (c) the harm [was] suffered because of reliance of the other or the third person upon the undertaking." (Emphasis omitted.)

The Woodlands Land Development Company, LJA Engineering, and Bowles asserted that to the extent appellants were arguing that The Woodlands Land Development Company, LJA Engineering, and Bowles undertook, gratuitously or for consideration, to render services to another that they knew or should have known

21

were necessary for the protection of a third person "by commissioning a study regarding flood of record levels (or even that they gave recommendations of *minimum* slab elevations based on flood of record levels)," there was no evidence that they had "undert[aken] to oversee the construction of slab heights or [had] precluded the [third-party] builders from exceeding any slab height recommendations." Rather, it was the builders who were responsible for the slab heights on appellants' properties. They argued that even if they owed a duty, at most their duty would have been to develop the subdivision in a manner that complied with all regulatory standards which they undisputedly did. And, even if they owed a duty to exercise reasonable care in their undertaking to determine the flood of record level and recommend that minimum slab heights be built six inches above it, they fulfilled this duty as well. They were entitled to rely on Pate's determination of the flood of record level, and to the extent appellants argued that The Woodlands Land Development Company, LJA Engineering, and Bowles should have double checked or independently assessed the accuracy of Pate's determination, appellants were arguing for an undertaking that The Woodlands Land Development Company, LJA Engineering, and Bowles did not undertake.

In their response to the summary judgment motion, appellants argued, as to their negligence claims, that The Woodlands Land Development Company, as the developer of Timarron, owed appellants a duty because "a developer owes an

implied warranty to develop its property in a good and workmanlike manner." As to their negligent undertaking claims, appellants disputed the assertion that the undertaking they alleged was "commissioning a study regarding flood of record levels (or [giving] recommendations of *minimum* slab elevations based on flood of record levels). Rather, they argued, The Woodlands Land Development Company "undertook to 'insure that [its] residents and businesses w[ould] not be threatened by flood damage,'" and The Woodlands Land Development Company "undertook [that] by establishing minimum slab elevations of six (6) inches above the [flood of record], that builders were required to meet, so that residents would not be threatened by flood damage from another [flood of record]." According to appellants, The Woodlands Land Development Company breached that undertaking. In their response, appellants stated that they would not address their negligence claims against LJA Engineering because, according to appellants, the summary judgment motion did not address any alleged negligence by LJA Engineering but rather focused solely on The Woodlands Land Development Company.

Appellants attached numerous exhibits to their summary judgment response. The Woodlands Land Development Company, LJA Engineering, and Bowles filed objections to some of those exhibits. The trial court sustained the objections.

In their reply to appellants' response, The Woodlands Land Development Company, LJA Engineering, and Bowles asserted that appellants had not directed

23

the trial court to "a single case holding that a developer owe[d] a duty to downstream purchasers." Further, as to appellants' negligent undertaking claim, The Woodlands Land Development Company, LJA Engineering, and Bowles asserted that the undertaking in this case was "to hire a third-party engineering firm . . . to determine the 1994 flood of record level and then set minimum slab elevations based on the 1994 flood of record as determined by [the third-party engineering firm]," which is exactly what The Woodlands Land Development Company, LJA Engineering, and Bowles did. They further argued that any attempt by appellants to redefine what the undertaking was failed. Finally, noting that appellants' response stated that it would not be addressing the negligence of LJA Engineering and Bowles, LJA Engineering and Bowles asserted that appellants had waived their arguments as to the propriety of summary judgment on appellants' claims against LJA Engineering and Bowles.

The trial court granted The Woodlands Land Development Company, LJA Engineering, and Bowles's summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims.[9]

---

[9] The Woodlands Land Development Company, LJA Engineering, and Bowles filed additional summary judgment motions on appellants' negligence, gross negligence, and negligent undertaking claims against them, which raised other arguments as to why they were entitled to summary judgment on appellants' claims. The trial court also granted those motions for summary judgment. Due to our disposition below, we need not discuss the specifics of the other summary judgment motions or appellants' arguments as to why the trial court erred in granting those other summary judgment motions. *See* TEX. R. APP. P. 47.1.

## Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). To prevail on a no-evidence summary judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the

25

motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements in the motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted). The trial court must grant a no-evidence summary judgment motion if the movant asserts that there is no evidence of one or more specified elements of the non-movant's claim on which the non-movant would have the burden of proof at trial and the non-movant fails to file a timely response or fails to produce summary judgment evidence raising a genuine issue of material fact on each challenged element. *See* TEX. R. CIV. P. 166a(i); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

To prevail on a matter-of-law summary judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the

plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### Summary Judgment

In their first issue, appellants argue that the trial court erred in granting the Woodlands Land Development Company summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims because the Woodlands Land Development Company did not conclusively establish that it did not owe appellants a duty or that it did not breach any duty. In their second issue, they contend that the trial court erred in granting The Woodlands Land Development Company, LJA Engineering, Bowles, and Howard Hughes summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims because they did not conclusively establish that appellants could not raise a genuine issue of

material fact on causation. In their third issue, appellants argue that the trial court erred in granting LJA Engineering and Bowles summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims because LJA Engineering and Bowles "never offered evidence, argument, or supporting legal authority to conclusively establish [that] they owed no duty and committed no breach." In their fourth issue, appellants argue that the trial court erred in granting Howard Hughes summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims because appellants "offered more than a scintilla of evidence that Howard Hughes ha[d] some direct responsibility because it stepped out of its role as a parent and participated in [the Woodlands Land Development Company's] activities."

## A. The Woodlands Land Development Company

### 1. Negligence and Gross Negligence Claims

Appellants argue that the trial court erred in granting The Woodlands Land Development Company summary judgment on their negligence and gross negligence claims because The Woodlands Land Development Company did not establish that it did not owe appellants a duty. According to appellants, The Woodlands Land Development Company had a "duty to exercise reasonable care in developing Timarron, particularly with regard to the flood-mitigation efforts it undertook."

A negligence cause of action has three elements: (1) a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022); *Watanabe v. Summit Path Partners, LLC*, 650 S.W.3d 112, 125 (Tex. App.—Houston [1st Dist.] 2021, no pet.). The threshold inquiry in a negligence case is whether a duty exists, which "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Elephant Ins. Co.*, 644 S.W.3d at 145 (internal quotations omitted). We review de novo a determination regarding whether a legal duty is owed. *See Black + Vernooy Architects v. Smith*, 346 S.W.3d 877, 882–83 (Tex. App.—Austin 2011, pet. denied).

The existence of a legal duty by the defendant to the plaintiffs is an essential element of the plaintiffs' negligence claims. *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 638 (Tex. 2023). If the defendant has no duty, then it cannot be held liable for negligence. *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 529 (Tex. App.—Austin 2009, no pet.). To determine whether a particular defendant owed a negligence duty to a particular plaintiff, courts first look at whether they have previously held that a duty does or does not exist under the same or similar circumstances. *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582–83 (Tex. 2023). Generally, Texas law imposes no duty to take action to prevent harm to others absent certain special relationships or

circumstances. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Garcia v. Kellogg Brown & Root Servs., Inc.*, No. 01-19-00319-CV, 2020 WL 3820426, at *6 (Tex. App.—Houston [1st Dist.] July 7, 2020, no pet.) (mem. op.). Special relationships include those existing between an employer and an employee, a parent and a child, and an independent contractor and a contractee. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

In their response to The Woodlands Land Development Company's summary judgment motion, appellants asserted that Texas case law had already implicitly recognized a negligence duty owed by developers in cases like this one, relying on the Texas Supreme Court's opinion in *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995).[10] However, in *Parkway*, issues of negligence and duty were not before the court. Instead, the supreme court was asked to decide whether "a real estate development company [had] violated the [DTPA]," after the development company built a wall that diverted water onto the plaintiffs' property, which resulted in flood damage to the plaintiffs' home, and the plaintiffs had informed the development company of the flooding issues before the wall was built. *Parkway*, 901 S.W.2d at 436–37. Although the plaintiffs in *Parkway* did sue the development company for

---

[10]     In their summary judgment response, appellants primarily focused on the court of appeals's opinion, rather than the Texas Supreme Court's ultimate opinion in the case. *See generally Parkway Co. v. Woodruff*, 857 S.W.2d 903 (Tex. App.—Houston [1st Dist.] 1993), *aff'd as modified*, 901 S.W.2d 434 (Tex. 1995).

negligence in addition to violations of the DTPA, the development company did not challenge on appeal the jury's finding of negligence, or the negligence damages awarded to the plaintiffs. *See id.* at 436. In short, the Texas Supreme Court was not asked to determine whether the development company owed a negligence duty to the plaintiffs in that case,[11] and we will not conclude that any of the language used by the supreme court in *Parkway* implicitly created a new negligence duty owed by developers.[12] *See Elephant Ins. Co.*, 644 S.W.3d at 145 ("Texas law requires the court . . . to balance the relevant factors in determining the existence, scope, and elements of legal duties." (internal quotations omitted)); *In re Luminant Generation Co.*, Nos. 01-23-00097-CV, 01-23-00102-CV, 01-23-00103-CV, 01-23-00392-CV, 01-23-00393-CV, --- S.W.3d ---, 2023 WL 8630982, at *7 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, orig. proceeding) (in determining "whether to impose a duty," courts must "be specific in determining the existence, scope, and elements of any new legal duties").

---

[11]     Likewise, this Court, at the intermediate appellate level, was also not asked to determine in *Parkway* whether the development company owed a negligence duty to the plaintiffs; issues of negligence and duty were not before this Court either. *See Parkway*, 857 S.W.2d at 917 (noting development company did not challenge jury's negligence finding on appeal).

[12]     Appellants, in their briefing, have not cited any other opinions recognizing the implicit ruling of a purported negligence duty that they now ask this Court to recognize.

"When a duty has not [already] been recognized in particular circumstances, the [next] question is whether one should be." *Elephant Ins. Co.*, 644 S.W.3d at 145 (alteration in original) (internal quotations omitted). Generally, intermediate appellate courts should be reluctant to recognize a new common-law duty that has no existence in established law. *See J.P. Morgan Chase Bank*, 302 S.W.3d at 535; *see, e.g.*, *In re Luminant Generation*, 2023 WL 8630982, at *10 & n.16 (declining invitation to impose new duty); *see also See Black + Vernooy Architects*, 346 S.W.3d at 881 ("The creation of a new common-law duty is a task better suited for the supreme court, not intermediate appellate courts.").

To determine whether a duty should be recognized, courts weigh the risk involved, the foreseeability of the risk, and the likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant (the "*Phillips* factors"). *See Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503–04 (Tex. 2017); *Phillips*, 801 S.W.2d at 525. We may also consider whether one party had superior knowledge of the risk or the right to control the actor who caused the harm. *See Elephant Ins. Co.*, 644 S.W.3d at 145. Foreseeability of the risk is the most important factor to consider, but foreseeability alone does not create a negligence duty. *City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex. 2009).

In determining whether to impose a duty, we do not determine whether the facts show a breach of an applicable standard of care. *See Elephant Ins. Co.*, 644 S.W.3d at 145. "Courts may not hold people to very general duties of exercising ordinary care in all circumstances." *Id.* Rather, Texas law requires courts to be specific in determining the existence, scope, and elements of any new legal duties. *Id.*

Turning to the *Phillips* factors, we note that in their appellate briefing, appellants address the *Phillips* factors, asserting that these factors weigh in favor of recognizing that The Woodlands Land Development Company "had a duty to exercise reasonable care in developing Timarron, particularly with regard to the flood-mitigation efforts it undertook." But, in their summary judgment response, appellants made no such argument to the trial court. Stated differently, appellants never argued to the trial court that the *Phillips* factors weighed in favor of recognizing that The Woodlands Land Development Company owed them a negligence duty, and because of this, the trial court could not grant The Woodlands Land Development Company summary judgment on appellants' negligence and gross negligence claims. Because appellants did not raise their argument concerning the *Phillips* factors in the trial court, we must address whether they waived their right to challenge the trial court's summary judgment ruling on such grounds. *See, e.g.*,

*Murray v. Pinnacle Health Facilities XV*, No. 01-13-00527-CV, 2014 WL 3512773, at *2 (Tex. App.—Houston [1st Dist.] July 15, 2014, pet. denied) (mem. op.).

Non-movants must expressly present in their written response or answer to a summary judgment motion any issues that would defeat a movant's entitlement to summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341, 343 (Tex. 1993); *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 824–25 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). To "expressly" present issues, the non-movants' written answer or response to the summary judgment motion must fairly apprise the movant and the trial court of the issues the non-movants contend should defeat summary judgment. *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 119 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Any issues not expressly presented by the non-movants to the trial court in a written response may not be considered as grounds for reversal.[13] *See* TEX. R. CIV. P.

---

[13] The exception to this general rule is that non-movants may still challenge on appeal the legal sufficiency of the evidence supporting summary judgment. *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Murray v. Pinnacle Health Facilities XV*, No. 01-13-00527-CV, 2014 WL 3512773, at *2 n.4 (Tex. App.—Houston [1st Dist.] July 15, 2014, pet. denied) (mem. op.); *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 511–12 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). This exception is not applicable here because appellants are not challenging the legal sufficiency of The Woodlands Land Development Company's evidence to support summary judgment as a matter of law.

166a(c); *Dubose*, 117 S.W.3d at 920; *Frazer*, 4 S.W.3d at 825; *see also* TEX. R. APP. P. 33.1(a) (as prerequisite for presenting complaint for appellate review, record must show complaint was made to trial court by timely request, objection, or motion). The failure to present an issue to defeat summary judgment in the trial court waives the issue on appeal. *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009); *Dubose*, 117 S.W.3d at 920; *Kaye v. Harris Cnty. Mun. Util. Dist. No. 9*, 866 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1993, no writ).

In its summary judgment motion, The Woodlands Land Development Company argued that it was entitled to judgment as a matter of law on appellants' negligence and gross negligence claims because appellants could not establish that The Woodlands Land Development Company owed it a negligence duty. The motion then explained that whether a defendant owes a duty to a plaintiff "depends on several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury, and the consequences of placing the burden on the defendant," i.e., the *Phillips* factors. (Internal quotations omitted.) And according to The Woodlands Land Development Company none of the *Phillips* factors weighed in favor of imposing a duty on it.

But appellants, in their summary judgment response, did not argue that the trial court should deny The Woodlands Land Development Company summary

35

judgment on appellants' negligence and gross negligence claims because, based on the *Phillips* factors, a negligence duty should be imposed on The Woodlands Land Development Company. Instead, appellants only argued that the trial court should deny The Woodlands Land Development Company's summary judgment motion because The Woodlands Land Development Company, as the developer of Timarron, already owed them a duty—a duty, which according to appellants, had been implicitly recognized by Texas law in *Parkway*. Because appellants did not timely raise their argument that the *Phillips* factors weighed in favor of recognizing a new negligence duty owed by developers, in circumstances like the instant case, thus, precluding the granting of summary judgment, we conclude that they have waived that issue for appellate review, and we may not consider it as grounds for reversal. *See* TEX. R. CIV. P. 166a(c); *Murray*, 2014 WL 3512773, at *3.

Notably, when as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the trial court's ruling if any of the summary judgment grounds are meritorious.[14] *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). In this case, the trial court

---

[14] The trial court's summary judgment order, titled "Order Granting Defendants' Motion for Summary Judgment as to [Appellants'] Negligence-Based Claims on the Basis of No Duty and No Breach," stated that after considering the summary judgment motion, the response, the evidence presented, and the arguments of counsel, the "Court GRANTS the Motion." "Accordingly, the Court . . . ORDERS that all remaining [appellants'] claims for negligence, gross negligence, and negligent undertaking are DISMISSED with prejudice."

could have determined, as we have, that Texas courts have not previously held that a developer owes a duty which appellants assert The Woodlands Land Development Company owes in this case. *See Mendez*, 671 S.W.3d at 582–83. Further, the trial court could have held that a new legal duty should not be recognized because the *Phillips* factors did not weigh in favor of it—an argument which appellants did not challenge in the trial court and have waived. These findings would have supported the trial court's granting of The Woodlands Land Development Company's summary judgment motion on appellants' negligence and gross negligence claims.

An appellant must attack all independent bases or grounds that fully support the complained-of order or judgment. *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of order or judgment, but the appellant assigns no error to that independent ground, an appellate court must accept the validity of the unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 424; *Britton*, 95 S.W.3d at 681.

As such, we hold that the trial court did not err in granting The Woodlands Land Development Company summary judgment on appellants' negligence and

gross negligence claims. *See Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the appellant fails to challenge all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment."); *see also Wright v. E.P. Operating Ltd. P'ship*, 978 S.W.2d 684, 687 (Tex. App.—Eastland 1998, pet. denied) ("[W]ithout negligence, there can be no cause of action for gross negligence.").

## 2. Negligent Undertaking Claims

Appellants argue that the trial court erred in granting The Woodlands Land Development Company summary judgment on their negligent undertaking claim because appellants "established a genuine dispute of material fact concerning duty and breach."

One who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured by the undertaking. *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976). To establish a "negligent undertaking," the plaintiffs must show that: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiffs' protection, (2) the defendant failed to exercise reasonable care in performing those services, and (3) either (a) the plaintiffs suffered harm because of their reliance on the defendant's performance or (b) the

defendant's performance increased the plaintiffs' risk of harm. *Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013).

### a. Evidentiary Rulings

As a preliminary matter, we address appellants' sub-issue asserting that the trial court abused its discretion in excluding Exhibits 11, 12 and 21, which they contend are relevant to their negligent undertaking claim.

We review a trial court's exclusion of evidence for an abuse of discretion. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules and principles. *State v. Gleannloch Comm. Dev., LP*, 585 S.W.3d 509, 524 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). We will affirm an evidentiary ruling that is supported by any legitimate ground, even if the ground was not raised in the trial court. *Id.* We will not reverse a trial court for an erroneous evidentiary ruling unless the error "probably caused the rendition of an improper judgment or prevented a proper presentation of the appeal." TEX. R. APP. P. 44.1(a); *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 474 (Tex. 1998).

Exhibits 11 and 12 are the sales contract between The Woodlands Land Development Company and the builders (Exhibit 12) and an attachment to the contract, "Development Criteria" (Exhibit 11). The Woodlands Land Development

Company objected to both exhibits, which span more than a thousand pages, on the grounds that appellants provided no specific guidance as to where the evidence could be found. It also objected to Exhibit 11 on the grounds that it constituted inadmissible hearsay and misrepresented testimony/evidence. The trial court sustained the objections without specifying the basis for its ruling and excluded the exhibits.

Appellants correctly point out that a signed instrument, such as a contract, that creates legal rights is not hearsay because it has legal effect independent of the truth of any statement contained in it. *See Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*, 520 S.W.3d 145, 157 (Tex. App.—Austin 2017, pet. denied); *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 434 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *Reeves v. Mem'l Terrace, Ltd.*, No. 14-02-00633-CV, 2004 WL 2933807, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2004, pet. denied) (mem. op.). However, The Woodlands Land Development Company also objected to Exhibits 11 and 12 on grounds that appellants provided no specific guidance as to where the particular evidence in support of their assertions could be found. On appeal, it asserts that the trial court was within its discretion to exclude Exhibits 11 and 12 on the basis of this objection. We agree.

When responding to a summary judgment motion, the nonmovant must expressly and specifically identify the supporting evidence on file it wants the trial court to consider. *See Speck v. First Evangelical Lutheran Church of Hous.*, 235

S.W.3d 811, 816 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.); *see also* TEX. R. CIV. P.166a cmt. 1997 (stating that summary judgment response must "point out evidence" raising fact issue on challenged elements). "Merely citing generally to voluminous summary judgment evidence in response to either a no-evidence or traditional motion for summary judgment is not sufficient to raise an issue of fact to defeat summary judgment." *Watanabe*, 650 S.W.3d at 135 (quoting *Nguyen v. Allstate Ins. Co.*, 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied)); *see Leija v. Laredo Cmty. Coll.*, No. 04-10-00410-CV, 2011 WL 1499440, at *5 (Tex. App.—San Antonio Apr. 20, 2011, no pet.) (mem. op.)) ("When a summary judgment respondent fails to direct the reviewing court to specific summary judgment evidence, a fact issue cannot be raised sufficient to defeat summary judgment."); *Kastner v. Gutter Mgmt. Inc.*, No. 14-09-00055-CV, 2010 WL 4457461, at *3 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, pet. denied) (mem. op.) ("Blanket citation to voluminous records is not a proper response to a no-evidence motion for summary judgment."). Here, appellants' summary judgment response did not cite a specific page or passage from Exhibits 11 and 12. Absent guidance from a nonmovant, trial and appellate courts are not required to sift through a voluminous exhibit in search of evidence to support the nonmovant's argument that a fact issue exists. *Walker v. Eubanks*, 667 S.W.3d 402, 409 (Tex. App.—

Houston [1st Dist.] 2022, no pet.); *Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex. App.—El Paso 2005, pet. denied); *Shelton v. Sargent*, 144 S.W.3d 113, 120 (Tex. App.—Fort Worth 2004, pet. denied). A trial court does not abuse its discretion in failing to consider summary judgment evidence the nonmovant does not specifically bring to the trial court's attention. *See Walker*, 667 S.W.3d at 409; *Kastner*, 2010 WL 4457461, at *8 (citing *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ)). The trial court did not abuse its discretion in excluding Exhibits 11 and 12.

The Woodlands Land Development Company also objected to the admission of Exhibit 21 as summary judgment evidence on the grounds that appellants failed to file the exhibit or attach the document to their summary judgment response "within seven days of the hearing."[15] Exhibit 21 is a February 14, 2013 email[16] from Fred LeBlanc of The Woodlands Development Company to Calleen McFerren, a manager with The Woodlands Homefinder Center, explaining what is meant by "flood of record." The email states that "as a result of this flood, [The Woodlands Land Development Company] developed a policy to designate the minimum slab

---

[15]    The objection misstates Rule 166a(c), which provides, in part, that "[e]xcept on leave of court, the adverse party, *not later than seven days prior to the day of hearing* may file and serve opposing affidavits or other written response." TEX. R. CIV. P 166a(c). (Emphasis added).

[16]    The evidence is an exhibit to Welbes's deposition.

elevations to be 0.5 feet above" it and that LeBlanc would consult with others about "how this information should be conveyed to customers." The trial court sustained the objections to the exhibit.

Appellants assert that The Woodlands Land Development Company's objection to Exhibit 21 as "untimely" is unfounded. Appellants argue that they filed and served a letter, i.e., notice, which specifically identified Exhibit 21 (and all exhibits) and included a copy of those documents at the embedded link in the letter thereby complying with Texas Rule of Civil Procedure 166a(d).[17] Appellants also contend that The Woodlands Land Development Company improperly based their objections to Exhibit 21 on Rule 166a(c), which requires "any supporting affidavits" to be filed "within seven days of the summary-judgment hearing."[18] They argue that

_____

[17]  Texas Rule of Civil Procedure 166a(d) provides:

> **(d) Appendices, References and Other Use of Discovery Not Otherwise on File.** Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a *notice* containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment. TEX. R. CIV. P. 166a(d). (Emphasis added).

[18]  As previously noted, Texas Rule of Civil Procedure 166a(c) states that "[e]xcept on leave of court, the adverse party, *not later than seven days prior to the day of hearing* may file and serve opposing affidavits or other written response." TEX. R. CIV. P 166a(c). (Emphasis added).

43

Exhibit 21 is not a "supporting affidavit" but, rather, a "discovery product" which is governed by Rule 166a(d) not Rule 166a(c).[19]

The record shows that The Woodlands Land Development Company objected to Exhibit 21 as "not on file" *and* "untimely." It asserted that appellants failed to file the exhibit or attach it to their summary judgment response at least seven days before the hearing as required by Rule 166a(c). They also argued that appellants failed to include Exhibit 21 on the flash drive delivered to The Woodlands Land Development Company and the trial court on the date their response was due, and they did not obtain leave of court to "forward another flash drive with this exhibit and others to the trial court and defense counsel the day after the deadline." Citing Rule 166a(d), The Woodlands Land Development Company asserted that this evidence could not be used to oppose summary judgment.

Assuming without deciding that Exhibit 21 was improperly excluded, the trial court's evidentiary ruling was not harmful and does not warrant reversal for the reasons discussed below. *See JLG Trucking*, 466 S.W.3d at 161 (stating plaintiff

requires
[19] Rule 166a(c) provides, in part, that "[e]xcept on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX. R. CIV. P 166a(c).

must establish that trial court abused its discretion in sustaining objections to evidence and that evidence would have made difference).

### b. Duty

The critical inquiry concerning the duty element in a negligent undertaking is whether the defendant acted in a way that requires the imposition of a duty where one otherwise would not exist. *Nall*, 404 S.W.3d at 555–56. Such a duty may arise if a person affirmatively undertakes to provide services to another upon which reliance can be based. *See Osuna v. S. Pac. R.R.*, 641 S.W.2d 229, 230 (Tex. 1982) ("Having undertaken to place a flashing light at the crossing for the purpose of warning travelers, the railroad was under a duty to keep the signal in good repair, even though the signal was not legally required.").

In its summary judgment motion, The Woodlands Land Development Company argued that it was entitled to summary judgment as a matter of law on appellants' negligent undertaking claim because appellants could not establish that The Woodlands Land Development Company undertook, gratuitously or for consideration, to render services that it knew or should have known were for the protection of appellants. *See Nall*, 404 S.W.3d at 555–56. It asserted that to the extent appellants argued that The Woodlands Land Development Company did so by commissioning a study regarding flood of record levels (or even that they gave recommendations of minimum slab elevations based on flood of record levels), there

45

is no evidence showing The Woodlands Land Development Company undertook to oversee construction of slab heights or precluded the builders from exceeding any slab height recommendations.

In their summary judgment response, appellants asserted that The Woodlands Land Development Company "incorrectly presume[d] . . . that the 'undertaking' [appellants] allege is [The Woodlands Land Development Company] 'commissioning a study regarding flood of record levels (or [giving] recommendations of *minimum* slab elevations based on flood of record levels).'" Rather, as alleged in their seventh amended petition, The Woodlands Land Development Company's undertaking was "for the sole purpose of protecting the property of [appellants], specifically the homes built in a development located in an area known to be subject to flood hazards," and it was the breach of this undertaking for which appellants sought to hold The Woodlands Land Development Company liable. The Woodlands Land Development Company "undertook this by establishing minimum slab elevations of six (6) inches above the [flood of record] that builders were required to meet, so that residents would not be threatened by flood damage from another [flood of record]."

The Woodlands Land Development Company, in its summary judgment reply, asserted that appellants' negligent undertaking claim failed because its own actions define the scope of the undertaking and not appellants' subsequent attempts

to redefine it. It argued that appellants' own expert admitted that The Woodlands Land Development Company only undertook to set minimum slab elevations based on the flood of record as determined by Pate. And, appellants' attempt to change the undertaking fails because (1) this was not the undertaking; (2) even if the 1984 Press Release, attached to the declaration of Jim Bradley, upon which appellants base the alleged undertaking was not inadmissible and irrelevant, at most it represents a vague goal and not a task upon which a negligent undertaking is predicated; and (3) appellants most recent theory of what the undertaking was is not in appellants' petition.

Both in the summary judgment proceedings and on appeal, the parties disagree about the scope of The Woodlands Land Development Company's undertaking. *See Torrington*, 46 S.W.3d at 839 ("When, as here, the facts about the scope of the assumed duty are in dispute, the jury should be instructed to that effect."). According to appellants, The Woodlands Land Development Company "undertook to 'insure that [their] residents and businesses will not be threatened by flood damage," and it "undertook this by establishing minimum slab elevations of six (6) inches above the [flood of record] that builders were required to meet, so that residents would not be threatened by flood damage from another [flood of record]." In response, The Woodlands Land Development Company asserted that its

47

undertaking was limited to its actual undertaking: recommending a minimum slab elevation of six inches above the flood of record height, as determined by Pate.

In support of their argument below, appellants relied on the following summary judgment exhibits: (1) a 1984 Press Release (attached to the declaration of Jim Bradley), and (2) the deposition testimony of appellants' expert, Phillip Bedient. With respect to the Press Release, The Woodlands Land Development Company objected to its admission below on the grounds that the document was not authenticated, constituted inadmissible hearsay, and violated the best evidence rule. The trial court sustained the objections and excluded the Press Release. Appellants do not challenge the propriety of the trial court's ruling regarding the Press Release on appeal and thus the evidence is not before us.

In his deposition, Bedient testified, in relevant part, as follows:

Q: So first you said flood of record. Why do you use the word "flood of record"? Who determines that, is that a FEMA thing, is that a Harris County thing, is that a something you came up with thing? Who determines flood of record and what does that mean as you use it in this report?

A. Flood of record in this particular instance was determined by The Woodlands, themselves — or utilized by The Woodlands, themselves. And the definition, as we talked about earlier today, was that The Woodlands came up with the flood of record for Spring Creek was that flood, October '94. And during that they then established that you should build six inches — slab should be six inches above the flood event.

Q: And I just want to make sure I'm following you, because when you say "flood of record" is something that — something The Woodlands

48

determined to do and The Woodlands determined to call it, that's not a FEMA regulation, that's not a Harris County regulation, it's not a City of Houston thing, that's — in other words, that's just something they decided to do?

A. That is that is true. That is as I understand it.

Q. There's no regulation that requires that or calls —

A. No.

Q. Okay.
Taking as true all evidence favorable to appellants and indulging every reasonable inference and resolving any doubts in their favor, as we must, there is at least some evidence that The Woodlands Land Development Company undertook to perform services (establishing minimum slab elevations of six (6) inches above the flood of record) that it knew or should have known were necessary for the protection of appellants (to ensure that residents would not be threatened by flood damage from another flood of record). *See Nall*, 404 S.W.3d at 555–56. Having concluded that appellants raised a fact issue as to whether The Woodlands Land Development Company owed appellants a duty under an undertaking theory, we must determine whether appellants created a genuine issue of material fact about whether The Woodlands Land Development Company exercised reasonable care in performing that service. *See Torrington*, 46 S.W.3d at 837.

**c. Breach**

In addition to the duty element, the plaintiffs must show that the defendant failed to exercise reasonable care in performing the services it undertook. *See Nall*, 404 S.W.3d at 555–56. That is, one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured by the undertaking. *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) (quoting *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976)).

Appellants alleged in their seventh amended petition that "Defendants failed to exercise reasonable care in dictating these slab elevations by failing to check the elevations against historical flood data in its possession of which it knew or should have known [] and by failing to monitor or oversee that home builders actually built to the specified locations."

In its summary judgment motion, The Woodlands Land Development Company asserted that even if it owed a duty to appellants, it would have been to develop the subdivision in a manner that met all regulatory standards. The Woodlands Land Development Company argued that it not only complied with all applicable regulatory standards but, in fact, exceeded all of the requirements, and did not breach any duty of care. Further, in the event it owed a duty to use reasonable care in its undertaking to determine the flood of record level and recommend that minimum slab heights be built six inches above it, it fulfilled that duty.

In their summary judgment response, appellants argued that The Woodlands Land Development Company's assertion that it fulfilled its duty to exercise reasonable care in its undertaking because it complied with applicable regulatory standards is determinative only if the standard of care is simple compliance with those standards, and not the undertaking alleged by appellants. Appellants point to the declaration of Randy Birdwell stating that regulatory standards are frequently exceeded and must be exceeded when it is clear that those standards are inadequate.

In its summary judgment reply, The Woodlands Land Development Company asserted that its undertaking involved commissioning a reputable third-party engineering firm to determine the flood of record level and, at most, following the determination, and they did not breach any standard of care in doing so.

Appellants contend on appeal that they have established a genuine dispute of material fact regarding breach. They assert that The Woodlands Land Development Company's argument that it did not undertake to determine the flood of record in any way other than hiring Pate is disputed by the evidence. Specifically, after the flood of record, The Woodlands Land Development Company collected its own high-water marks along Spring Creek in the Woodlands. It used those high-water marks—which showed that the flood of record was above the 500-year flood level—to create its own map of the flood of record levels. However, according to appellants, Pate's modeled estimates conflicted with The Woodlands Land Development

Company's own data and demonstrated an error in Pate's work.[20] Appellants argue that The Woodlands Land Development Company "had actual knowledge that the modeled flood estimate Pate provided was incorrect [but] then did nothing to prevent Pate's flawed estimates from being used in the Timarron development."

In his expert report, Bedient stated that The Woodlands Land Development Company "requested one of its engineers (Pate Engineers) to provide the 1994 Flood of Record elevations along Spring Creek in the vicinity of the Timarron development, west of Kuykendahl Road." Pate submitted its proposal "to provide such information by using the HCFCD [Harris County Flood Control District] hydraulic model of Spring Creek developed as part of its TSARP [Tropical Storm Allison Recovery Project] effort," and The Woodlands Land Development Company approved the proposal. Pate prepared a "1994 Flood of Record Delineation" map which it submitted to The Woodlands Land Development Company in March 2006. The Woodlands Land Development Company then provided the map to LJA Engineering and "instructed them to set minimum slab elevations at least 6 inches above the 1994 Flood of Record in preparing the design plans for various sections

---

[20]    Citing Bedient's expert report, appellants point to an example showing where the high-water marks that The Woodlands Land Development Company obtained north of the Kuykendahl Road bridge were 142.5 feet after the flood of record. Those high-water marks showed the flood of record was above the 500-year flood level. But when Pate completed its modeled estimate of the flood of record, the estimate at this specific location was only 141 feet, which was below both the flood of record high-water mark and the 500-year flood level.

of Timarron." This evidence shows that The Woodlands Land Development Company undertook to establish minimum slab elevations six inches above the flood of record based on Pate's determination, and it fulfilled the undertaking. Appellants presented no evidence showing that The Woodlands Land Development Company's undertaking included an independent assessment of Pate's determination. Indeed, had it done so, it would ostensibly have had no reason to hire Pate to provide the flood of record elevations. And, contrary to appellants' assertion, there is no evidence showing that The Woodlands Land Development Company hired Pate to "supplement the observed data" it had. Rather, the evidence shows that The Woodlands Land Development Company hired Pate to provide the flood of record levels based on the approved modeling and not to supplement any data.

Bedient testified that Pate is a "a well-recognized good reputation engineering firm" that does "capable, quality work," and that Pate's reliance on the TSARP model in determining the flood of record was reasonable. He testified that The Woodlands Land Development Company "exceeded all of the regulatory requirements" established by the [HCFCD] . . . [b]y several feet in every instance," and that he had never seen a master-planned community with higher standards than The Woodlands Land Development Company. Appellants did not present any evidence raising a genuine issue of material fact as to whether The Woodlands Land Development Company exercised reasonable care in performing what it undertook

53

to accomplish. *See Nall*, 404 S.W.3d at 555–56. As such, the trial court did not err in granting summary judgment to The Woodlands Land Development Company on appellants' negligent undertaking claim.[21] We overrule appellants' first issue. Having done so, we also overrule the portion of appellants' second issue regarding causation as it pertains to The Woodlands Land Development Company.

## B.   LJA Engineering and Bowles

In their third issue, appellants argue that the trial court erred in granting LJA Engineering and Bowles summary judgment on appellants' negligence and gross negligence claims because LJA Engineering and Bowles "did not meet their traditional summary judgment burden on duty or breach."[22]

---

[21]   Appellants assert that Exhibit 21 is critical for two reasons: (1) it is a written acknowledgement that The Woodlands Land Development Company undertook to create and adopt a policy to increase minimum slab elevations, and (2) it reflects The Woodlands Land Development Company's intent to communicate that policy to customers. As noted above, even if the trial court erred in excluding the exhibit, the trial court's ruling was not harmful. First, in light of our conclusion that there was evidence, namely Bedient's testimony, showing that The Woodlands Land Development Company undertook to establish minimum slab elevations six inches above the flood of record, Exhibit 21 is merely cumulative of that evidence. *Bartosh v. Gulf Health Care Center-Galveston*, 178 S.W.3d 434, 439 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("To establish harm (*i.e.,* that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment), the appellant must demonstrate that the excluded evidence was both controlling on a material issue and not cumulative of other evidence.") (citing *Williams Distrib. Co. v. Franklin,* 898 S.W.2d 816, 817 (Tex. 1995)). Second, because we conclude that appellants did not present evidence raising a material fact issue on breach, we do not reach the issue of reliance (i.e., whether appellants knew of The Woodlands Land Development Company's policy and relied on it to their detriment).

[22]   Although appellants' briefing argues that the trial court erred in granting The Woodlands Land Development Company's summary judgment motion on

In their motion for summary judgment, LJA Engineering and Bowles asserted that they were entitled to summary judgment as a matter of law on appellants' negligence-based claims because there was no duty or breach. In the motion, LJA Engineering and Bowles explained that appellants were homeowners in Timarron, a subdivision that flooded during Hurricane Harvey. The Woodlands Land Development Company "began the process of developing" Timarron by "taking large tracks of raw land" and "dividing them into smaller (but still large) areas, called sections; platting and obtaining government approval for those platted sections, with specific streets and lots laid out; and causing the streets and major utilities to be constructed." (Internal footnote omitted.) During development, The Woodlands Land Development Company contracted with LJA Engineering "to perform platting and other engineering work in connection with" Timarron.

LJA Engineering and Bowles further explained that after the development of Timarron, appellants bought their properties directly from various third-party

---

appellants' negligent undertaking claims against it, appellants' briefing does not argue that the trial court erred in granting LJA Engineering and Bowles summary judgment on appellants' negligent undertaking claims against them. Instead, the argument portion of appellant's opening brief related to their third issue solely focuses on whether the trial court erred in granting summary judgment on appellants' negligence and gross negligence claims against LJA Engineering and Bowles, asserting that LJA Engineering and Bowles did not establish as a matter of law that they had no negligence duty to appellants or that they did not breach any duty owed to appellants. Thus, we hold that appellants have waived any challenge to the trial court's summary judgment ruling as to appellants' negligent undertaking claims against LJA Engineering and Bowles. *See* TEX. R. APP. P. 38.1(i).

55

builders. Neither LJA Engineering nor Bowles were involved in appellants' purchases of their properties nor with the building of appellants' homes. And LJA Engineering and Bowles "did not determine the final lot grading or slab heights for any [of appellants'] propert[ies]."

According to LJA Engineering and Bowles, they were entitled to summary judgment as a matter of law on appellants' negligence and gross negligence claims against them because appellants could not establish that LJA Engineering and Bowles owed a duty to appellants, and even if a duty existed, LJA Engineering and Bowles did not breach that duty.

More specifically, as to any negligence duty, the summary judgment motion explained that whether a defendant owes a duty to a plaintiff "depends on several factors, including risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury, and the consequences of placing the burden on the defendant." (Internal quotations omitted.) Further, the nature of the relationship between the plaintiff and the defendant is a significant consideration in determining the existence of a duty of care. In making such a statement, LJA Engineering and Bowles cited to *Hartman v. Urban*, 946 S.W.2d 546 (Tex. App.—Corpus Christi–Edinburg 1997, no writ), for the proposition that "an engineer who prepared [an] erroneous plat for [a] developer did not owe a duty to [the] subsequent purchaser given [the] lack of [a] relationship

56

with [the] subsequent purchaser, even though it was foreseeable that [the] purchaser would rely on [the] plat."

Additionally, in their summary judgment motion, LJA Engineering and Bowles argued that none of the aforementioned *Phillips* factors, which were to be considered in determining whether to impose a new legal duty on LJA Engineering and Bowles, warranted imposing a duty on them. First, LJA Engineering, and Bowles had no relationship with appellants, and Hurricane Harvey was an unprecedented storm, which could not have been foreseen. Further, the risk of a Hurricane-Harvey-like event was low, and the probability of injury was low "when balanced against the social utility of [LJA Engineering and Bowles] complying with existing [regulatory] standards, which [was] what they did." And the "magnitude or burden would be great if [LJA Engineering and Bowles] had to undertake ultimate responsibility and authority for construction of slab heights that would guard against unforeseeable floods (usurping this from the [third-party] builder[s] to whom [the properties were already sold])." Additionally, "placing the burden on [LJA Engineering and Bowles] would result in highly undesirable consequences— namely, forcing [them] to undertake unrealistic and cost-prohibitive oversight of builders' construction of slabs." Thus, there was "no basis to impose upon [LJA Engineering and Bowles] a duty owed toward downstream purchasers in negligence."

In their response to the summary judgment motion, appellants stated that they would not address any arguments by LJA Engineering and Bowles as to why they were entitled to summary judgment on appellants' negligence and gross negligence claims because, in appellants' opinion, the motion for summary judgment "d[id] not address any negligence by" LJA Engineering and Bowles.[23]

"To preserve an argument against the granting of a motion for summary judgment for appellate review, the non-movant must expressly present that argument to the trial court within its written response to the motion." *Herron v. D & S Cmty. Servs.*, No. 06-17-00015-CV, 2017 WL 3430904, at *2 (Tex. App.—Texarkana Aug. 10, 2017, no pet.) (mem. op.); *see also* TEX. R. CIV. P. 166a(c); *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Here, appellants did not respond to any arguments made by LJA Engineering and Bowles in their motion for summary judgment. When the non-movants fail to respond to a matter-of-law summary judgment motion, they may only challenge whether the movants met their initial burden of proof. *See Polecat Hill, LLC v. City of Longview*, 648 S.W.3d 315, 333 (Tex. App.—Texarkana 2021, no pet.).

---

[23] Instead, appellants, in their response, addressed only their negligence and gross negligence claims against The Woodlands Land Development Company, arguing that The Woodlands Land Development Company was not entitled to summary judgment as a matter of law on those claims.

In their briefing, appellants summarily state that LJA Engineering and Bowles, in their summary judgment motion, did not "articulate arguments about how [they] lacked a duty as a matter of law" and that LJA Engineering and Bowles's "discussion of case law supporting [their] 'no duty' argument solely focused on whether a developer owes a duty; there was no discussion of case law addressing engineers." (Emphasis omitted.) To the extent that appellants' statements in their briefing can be construed as an argument that LJA Engineering and Bowles did not meet their initial burden of establishing their entitlement to summary judgment because they failed to establish that they owed no duty to appellants as a matter of law, we conclude that the argument is waived due to inadequate briefing.[24] *See* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) ("Only when we are provided with proper

---

[24] "An appellate brief is meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." *Schied v. Merritt*, No. 01-15-00466-CV, 2016 WL 3751619, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (internal quotations omitted). And Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

59

briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other.").

We overrule appellants' third issue. Having done so, we also overrule the portion of appellants' second issue regarding causation as it pertains to LJA Engineering and Bowles.

## C.    Howard Hughes

In their fourth issue, appellants argue that the trial court erred in granting Howard Hughes summary judgment as a matter of law on appellants' negligence, gross negligence, and negligent undertaking claims because appellants "established a genuine issue of fact on the [direct] liability" of Howard Hughes. Appellants assert that Howard Hughes "was not a mere silent owner of [The Woodlands Land Development Company]," but rather a direct participant in The Woodlands Land Development Company's activities.

In the trial court, Howard Hughes filed a combined no-evidence and matter-of-law motion for summary judgment. In the no-evidence portion of Howard Hughes's summary judgment motion, it asserted that appellants could not establish the elements of their negligence, gross negligence, and negligent undertaking claims, including duty, breach, and causation, against Howard Hughes. And Howard Hughes requested that the trial court grant its no-evidence summary judgment motion, in addition to its matter-of-law summary judgment motion.

The trial court then signed an order granting Howard Hughes's "Traditional and No-Evidence Motion for Summary Judgment," finding not only that Howard Hughes was entitled to summary judgment "under traditional summary judgment standards," but also that "an adequate time for discovery ha[d] passed and there [was] no evidence to support [appellants' negligence, gross negligence, and negligent undertaking claims] against [Howard Hughes]." Thus, the trial court also found that Howard Hughes was "entitled to summary judgment under no-evidence summary judgment standards."

On appeal, appellants do not address the merits of Howard Hughes's no-evidence summary judgment motion.[25] Instead, appellants focus solely on the argument that Howard Hughes made in the matter-of-law summary judgment motion, namely that it was entitled to judgment as a matter of law on appellants' negligence, gross negligence, and negligent undertaking claims against it because it

---

[25] We note that in the "Issues Presented" section of appellants' opening brief, appellants mention Howard Hughes's no-evidence motion for summary judgment, listing their fourth issue as follows: "[W]as Howard Hughes entitled to traditional and *no-evidence summary judgment* on [appellants'] direct-liability theory when [appellants] offered evidence of Howard Hughes's participation in the [Woodlands Land Development Company's] activities and that Howard Hughes knew of the [Woodlands Land Development Company's] negligently implemented policy?" (Emphasis added.) But in the argument portion of appellants' brief, appellants do not address Howard Hughes's summary judgment argument that no evidence established the elements of appellants' negligence, gross negligence, and negligent undertaking claims. *See* TEX. R. APP. P. 38.1(i); *see also Buggelli v. Feltis*, No. 14-07-00027-CV, 2008 WL 4308333, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2008, no pet.) (mem. op.) (issues presented are waived when they are not supported by arguments in brief).

61

was not involved in the development of Timarron, either directly or indirectly; instead, it acquired an ownership interest in The Woodlands Land Development Company after Timarron was platted and was simply the parent company of The Woodlands Land Development Company at the time appellants filed suit. Because appellants have not challenged the merits of Howard Hughes's no-evidence summary judgment motion, we must affirm the trial court's grant of summary judgment on appellants' negligence, gross negligence, and negligent undertaking claims. *See, e.g.*, *Hudson v. Mem'l Hosp. Sys.*, No. 01-19-00300-CV, 2021 WL 1414283, at *9 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, no pet.) (mem. op.) (affirming summary judgment where defendant filed combined no-evidence and matter-of-law summary judgment motion, but plaintiff, on appeal, did not challenge trial court's granting of no-evidence summary judgment on her claim); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 722 (Tex. App.—Fort Worth 2013, no pet.) (affirming no-evidence summary judgment as to gross negligence claim when appellant did not challenge merits of motion on that claim on appeal); *Kipp v. Dyncorp Tech. Servs., LLC*, No. 01-06-00906-CV, 2007 WL 3293719, at *5 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op.) (affirming no-evidence summary judgment on premises-liability claim because, in trial court, movant asserted no evidence was produced by non-movant on each element of claim, but, on appeal, non-movant did

not address two elements); *see also Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (proscribing reversal of summary judgment without properly assigned error).

We overrule appellants' fourth issue. Having done so, we also overrule the portion of appellants' second issue regarding causation as it pertains to Howard Hughes.[26]

## Conclusion

We affirm the judgment of the trial court.

Amparo Monique Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

---

[26] To the extent that appellants made additional arguments in their briefing, due to our disposition, we do not address them. *See* TEX. R. APP. P. 47.1.